142023

EX PARTE WILLIAMSON, STATE HIGHWAY ENGINEER,
*ET AL.*, HEARON *ET AL.* v. CALUS *ET AL.*

(183 S. E., 505)

See also 178 S. C., 381; 183 S. E., 13.

*Messrs. John M. Daniel, Attorney General,* and *J. Ivey Humphrey* and *M. J. Hough, Assistants Attorney General,* for petitioners.

January ·13, 1936.

*Per Curiam.*

By an Act of the General Assembly of South Carolina, enacted at the Special Session of 1935, and approved December 21, 1935, entitled: "An Act providing ,for the operation, supervision and control of the State Highway Department for· a period of sixty (60) days, and to make appropriation therefor," the duties and powers of the Chief Highway Commissioner and the State Highway Commission (for a period of 60 days) were devolved upon the petitioners, J. S. Williamson, State Highway Engineer, and O. P. Bourke, secretary and treasurer of the State Highway Commission; and the petitioners, A. J. Beattie, Comptroller General, E. P. Miller, State Treasurer, and F. C. Robinson, secretary to the commissioners of the sinking fund, were designated and authorized to act as a supervisory highway board and to exercise general supervision over the affairs of the State Highway Department for a period of 60 days.

The above-named officers have duly qualified and entered upon the discharge of their duties, and now petition the Court in this cause to construe the act above referred to, so that they may be advised of the limits of their duties, power, and authority thereunder.

They especially set forth in their petition that the procedure that has been followed by the Chief Highway Commissioner and the State Highway Department or State Highway Commission prior to the 28th day of October, 1935, in handling road and bridge construction contracts that are

financed from funds supplied therefor by the federal government, is briefly, as follows: Projects to be included in the program are proposed by the State Highway Department, approved by the State Highway Commission, and then submitted to the Bureau of Public Roads of the federal government for approval, and, when so approved, plans are prepared by the State Highway Department and submitted to the said Bureau of Public Roads, and, if the plans are approved by it, the said Highway Department is authorized to advertise for bids, and, when bids are received, they are tabulated. If in the opinion of the State Highway Engineer the low bid appears reasonable, the tabulation of all bids is then submitted to the Bureau of Public Roads, with the recommendation that the contract be awarded to the lowest bidder, and, upon approval of the contract to the low bidder, the award is made by the Chief Highway Commissioner, and this award authorizes the contractor to start work, but provides that no payment will be made to him until a contract is executed. Copies of the contract are prepared and furnished the contractor for execution and return to the Chief Highway Engineer, who executes said contract for the State Highway Department, subject to the approval of the Chief Highway Commissioner.

It appears from the petition herein that on October 28, 1935, at which time the regularly constituted State Highway Commissioners were dispossessed of their offices and possession and custody thereof assumed by the National Guard under the orders of the Governor of the State, various contracts were in process of being let, and awards made for the construction of a considerable number of road projects throughout the State. These were in various intermediate stages of completion at the time above mentioned, and have never been consummated.

The petition further sets forth, in Paragraph 5, that from the records of the Highway Department it is shown that on October 2, 1935, a contract was awarded to L. M. Gray, of Gainesville, Fla., for $57,528.21,

for the construction of United States Work Program Project No. W. P. H., 361-B, Orangeburg County, and the work was commenced on the project on October 21, 1935, and that a contract therefor was executed by the contractor and the Highway Department through the Highway Engineer, but lacked the approval of the Chief Highway Commissioner, and the petitioners have found by reference to the record that there are fifteen similar contracts that were not approved by said Highway Commissioner.

As construed by us, the act in question gives the petitioners full authority to proceed with the approval of these contracts.

It appears from Paragraph 6 of the petition that prior to the military occupation of the Highway Department, to wit, on October 18, 1935, bids were received by the State Highway Commission on four roads and bridge projects, and that the low bidders on the said projects were designated; and further that the Bureau of Public Roads of the federal government had concurred in awarding these contracts, but such approval from the Bureau was not received in time to make an award prior to October 28, 1935.

The petitioners, under the authority given them under the Act of the General Assembly approved December 21, 1935, in our opinion, have full authority and power to take the necessary steps to make said awards and to complete the signing of the contracts so that the work on the said projects may be commenced.

From Paragraph 7 of the petition it appears that the State Highway Commission, on October 20, 1935, advertised for bids on seven road and bridge projects, and on October 27, 1935, bids were asked for on six projects. In response to these advertisements, bids were received by the State Highway Engineer on November 5, 1935, and on November 12, 1935, on which dates the National Guard had control and custody of the department. Evidently, tabulation of the bids received was made by the

officials and employees attending to the duties of the State Highway Commission under military control, and were submitted to the Bureau of Public Roads. We have held in this case that the seizure and occupation of the State Highway Department by the National Guard was an unlawful usurpation, and that neither they nor any board acting under them or the Governor possessed lawful authority to conduct the normal operations of the department. Therefore this tabulation of bids while the department was under the military regime was nugatory and of no effect. As stated, the bids were duly called for by the regularly constituted State Highway Commission prior to military control, but such bids having been received during such military occupation, it becomes necessary for the petitioners to make the tabulation referred to themselves and re-submit the result of their work to the Bureau of Public Roads in the regular way. It follows that, if the Bureau thereafter concurs with the petitioners in awarding contracts on those projects, the petitioners are duly authorized under the Act of December 21, 1935, and the State Highway laws to make awards and enter into contracts for these projects.

It appears from Paragraph 8 of the petition that prior to October 25, 1935, the State Highway Commission approved road projects amounting to $2,703,000.00 and grade crossing projects amounting to $3,059,900.00. Funds for financing these projects are to be furnished by the federal government. It also appears that a number of projects under the National Recovery Program were approved by the State Highway Commission prior to October 28, 1935, but these have not yet been let to contract. Funds for financing these projects are also to be furnished by the federal government. Under the authority of the Act of December 21, 1935, the petitioners are clothed with full authority to go on with these programs in the usual manner followed by the regularly constituted but suspended State Highway Commissioners and Chief Highway Com-

missioner, that is, to advertise for bids, enter into contracts, and proceed with the construction work.

The legislative intent as embodied in and declared by the Act is clear.

Sections 1 and 2 of the Act of the General Assembly ▌ approved December 21, 1935, names the personnel of the present acting board of officials who are petitioners herein; and Section 1 further declares that for a period of 60 days "beginning from the approval of this Act the duties and powers of the Chief Highway Commissioner and the State Highway Commission shall be devolved upon J. S. Williamson, State Highway Engineer, and O. P. Bourke, Secretary and Treasurer of the State Highway Commission."

There is no restriction or limitation contained in this Act of the duties and powers referred to. This language carries all of those duties and powers conferred by all the provisions of statutory law affecting the State Highway Department, the State Highway Commission, and the Chief Highway Commissioner, none of which laws are repealed by the passage of the Act.

Section 2 likewise authorizes certain state officials, who also appear as petitioners, to act as a supervisory highway board for the said sixty-day period, "to exercise general supervision over the affairs of the State Highway Department for sixty days."

Section 3 of the Act authorizes and directs an audit of the affairs of the State Highway Department for the period during which the department was under military control.

It is clear from an examination of Section 4 that it was not the intention or effect of this Act, either by express provision, inmpilation, or inference, to alter, supersede, make non-operative, or modify the present highway laws or other laws (a) so as to affect the legal status of the present State Highway Commission or Chief Highway Commissioner; or (b) to interfere with the issues raised, or which may be raised; or (c) the adjudication of issues in any judicial

proceeding, or in any other proceeding now in progress and affecting the State Highway Commission or Chief Highway Commissioner.

It is perfectly evident that it was the aim and purpose of the General Assembly that this Act should take effect only in so far as may be necessary to fully and adequately provide for and regulate the normal operation of the State Highway Department during the 60-day period, without in any way prejudicing the rights and interests of the State Highway Commissioners and the Chief Highway Commissioner in any judicial proceeding now pending affecting their legal and official status.

Under this act (December 21, 1935), it was the legislative intent that the petitioners conduct and operate the affairs of the State Highway Department for the 60-day period therein provided for; and to that end they are fully clothed with all powers and authority heretofore vested in and exercised by the regularly constituted State Highway Commission and Chief Highway Commissioner, in order that the normal and accustomed functions of the State Highway Department shall not be interrupted; and they may perform all acts and discharge all duties in connection therewith heretofore lawfully performed and discharged by the regular State Highway Commission and Chief Highway Commissioner in the usual operation of the department.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.